UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| GUIDEONE ELITE INS. CO., | : | Case No. 3:12-cv-110 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| SYNERGY BLDG. SYS., INC., *et al.*, | : | |
| | : | |
| Defendants. | : | |

**DECISION AND ENTRY GRANTING DEFENDANT THE ALEX N. SILL
COMPANY'S MOTION TO DISMISS (Doc. 10)**

This civil action is before the Court on the motion of Defendant Alex N. Sill

Company ("Sill")[1] to dismiss the Complaint as against Sill (Doc. 10), and the parties'

responsive memoranda (Docs. 14, 17).[2]

## I.    FACTS ALLEGED

For purposes of this motion to dismiss, the Court must: (1) view the Complaint in

the light most favorable to Plaintiff; and (2) take all well-pleaded factual allegations as

true. *Tackett v. M&G Polymers*, 561 F.3d 478, 488 (6th Cir. 2009).

Plaintiff GuideOne is an Iowa insurance company.  (Doc. 1 at 1).  Defendant Sill is

an Ohio corporation engaged in the business of public insurance adjusting.  (*Id*. at 1-2).

Defendant Synergy is an Ohio corporation engaged in commercial construction. (*Id*. at 1).

---

[1]  Defendant Synergy Building Systems, Inc. ("Synergy") is also a party to this case.

[2]  To the extent the Court finds GuideOne's pleadings to be deficient, GuideOne seeks
leave to amend or supplement pursuant to Fed. R. Civ. P. 15(a)(2).

On September 8, 2008, fire damaged the Spring Valley Academy ("the school"), a private school with students from kindergarten through twelfth grade.  (*Id*. at 2).  The Ohio Conference Association of Seventh-Day Adventists Church ("OCSDA") owned the school.  (*Id*.)  At the time of the fire, Plaintiff GuideOne insured OCSDA under a commercial property policy and this policy covered OCSDA's loss arising from the fire on September 8, 2008.  (*Id*. at 3-5).

Following the fire, without GuideOne's authorization, OCSDA contracted with Synergy for immediate construction remediation to ensure the safety of the building and to avoid additional damages.  (*Id*.)  OCSDA also contracted with Sill to appraise and adjust the repair and replacement of OCSDA's loss.  (*Id*.)  In October 2008, upon Sill's approval and advice, and without GuideOne's authorization or approval, OCSDA entered into a second agreement with Synergy to perform additional work at the school.  (*Id*.)  This work included design, demolition, reconstruction, repair and replacement of fire damaged portions of the school building.  (*Id*.)

In November 2008, GuideOne requested that Synergy cease and desist from construction and demolition at the school that was not reasonable and necessary to protect the property from further damage.  (*Id*. at 5-6).  In December 2008, GuideOne notified OCSDA and Sill of its intent to repair, rebuild, or replace the lost or damaged property.  (*Id*. at 6).  GuideOne's intent to this extent was later communicated to Synergy.  (*Id*.)  Thereafter, Synergy, in concert with Sill, continued with demolition and construction at

the school that allegedly was not reasonably necessary to protect the property from further damage from the fire.  (*Id*.)

GuideOne now brings this action against Synergy and Sill.  GuideOne alleges that Sill:

> breached its contract with OCSDA to properly and accurately appraise and adjust this fire loss by directing, facilitating, coordinating, assisting or encouraging Synergy to continue demolition and construction activities not related to immediate construction remediation measures after the November 18, 2008, meeting and by including enhanced, enlarged, or unsupported costs or expenses in its appraisal(s) submitted to GuideOne for payment, thereby delaying and unnecessarily complicating the determination of scope of repair and resolution and causing or contributing to the enhanced repair, rebuild and replacement expenses that GuideOne was required to incur on behalf of OCSDA under the policy.

(*Id*. at 7).  GuideOne asserts that it possesses OCSDA's right of action against Sill on the breach of contract by virtue of its payment to OCSDA under the policy.  (*Id*.)  Sill now moves to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  (Doc. 10).

## II.    STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted."  To show grounds for relief, Fed. R. Civ. P. 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, -- U.S. --, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Id*. (citing *Twombly*, 550 U.S. at 555). In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation[.]" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265 (1986). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Id*.

Accordingly, in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949. A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. (citing Fed. Rule Civ. Proc. 8(a)(2)).

### III.    ANALYSIS

Sill moves to dismiss the Complaint arguing that it fails to assert a subrogation claim.

GuideOne argues that Sill was acting on behalf of OCSDA in causing the loss, and that Sill reached and acted outside the scope of the contract.  When an agent acts outside the scope of his authority the principal is not bound.  *See, e.g., Damon's of Missouri, Inc. v. Davis*, 590 N.E.2d 254 (Ohio 1992).  The Complaint alleges that Sill breached its contract with OCSDA and that breach lead to the enhanced damages sustained by OCSDA and paid for by GuideOne.  (Doc. 1 at ¶ 18).

Specifically, GuideOne argues that its Complaint arises out of a so-called "second loss" allegedly separate from the initial loss resulting from the September 2008 fire that damaged Spring Valley Academy.  Although GuideOne makes repeated reference to the purported "first loss" and "second loss" in their memorandum contra, the Complaint is devoid of such terminology.  Additionally, the Complaint does not allege that GuideOne issued an insurance policy to OCSDA covering "negligent workmanship," which GuideOne describes as the cause of the co-called "second loss."  (Doc. 14 at 8).  Nor does GuideOne allege that its insurance policy extended to its insured's contractual responsibility for the "second loss."  Instead, as the property and casualty insurer, GuideOne insured the damage and losses resulting from the fire.   If the so-called "second loss" in fact was a separate loss, then there was no insurance coverage and GuideOne has no subrogation claim.  *See, e.g., PIE Mut. Ins. Co. v. Ohio Ins. Guar. Ass'n*, 611 N.E.2d 313, 316 (1993) (no subrogation right arises out of a voluntary payment).

First, Sill contends that GuideOne is precluded as a matter of law from asserting claims against it because it worked as an agent of GuideOne's insured. "An agent is not liable for harm to a person other than his principal because of his failure adequately to perform his duties to his principal, unless physical harm results from reliance upon performance of the duties by the agent, or unless the agent has taken control of land or other tangible things." *Meridian Sec. Ins. Co. v. Hoffman Adjustment Co.*, 933 N.E.2d 7, 12 (Ind. App. 2010) (citing *Greg Allen Const. Co., Inc. v. Estelle*, 798 N.E.2d 171 (Ind. 2003)). Sill's citation to *Meridian* is misguided, because GuideOne asserts the claims of Sill's principal, *i.e.*, OCSDA, via a contractual subrogation provision. Accordingly, Sill's first argument is unavailing.

Second, Sill contends that GuideOne's subrogation claim[3] is waived, because any assertion that its adjustment of OCSDA's fire loss claim was inflated would have been a defense to paying the entire amount of the allegedly inflated loss. In essence, Sill argues that GuideOne volunteered full payment. GuideOne seeks to assert its insured's claim against the insured's adjuster pursuant to a subrogation provision in the insurance policy. Specifically, GuideOne's theory is that it paid too much to OCSDA for post-fire repair work performed by Synergy, and that Sill thereby "breached its contract with OCSDA."

_____

[3] Subrogation, in the insurance context, "is '[t]he principle under which an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy.'" *Ohio Bureau of Workers' Comp. v. McKinley*, 956 N.E.2d 814, 820 (Ohio 2011).

(Doc. 1 at ¶ 18).  However, GuideOne steps into the shoes of its insured, OCSDA and acquires no greater rights than OCSDA.  *Underwriters at Lloyd's Under Policy No. LHO10497 v. Peerless Storage, Co.*, 404 F.Supp. 492, 496 (S.D. Ohio Nov. 26, 1975).  Therefore, because OCSDA does not itself have any claim against Sill under the contract between Sill and OCSDA, GuideOne cannot assert its own separate claim against Sill based on the notation that GuideOne paid too much.

Sill did not breach its contract with OCSDA by including in OCSDA's proof of loss (that GuideOne paid) the full measure of OCSDA's insured loss.  It is undisputed that GuideOne, as the putative subrogee, steps into the shoes of the subrogor, OCSDA.  OCSDA itself has no claim against Sill, its public insurance adjuster, for including in OCSDA's proof of loss all of the losses arising out of the insured occurrence.  Therefore, because OSCDA itself has no claim against Sill, GuideOne has no pass-through subrogation claim against Sill.

With respect to GuidOne's newly-asserted "first loss" versus "second loss," GuideOne argues that Sill breached its contract with OCSDA because the contract between Sill and OCSDA "consisted of appraising the 'first loss' and did not include causing the 'second loss.'"  The implication is that it now characterizes the "first loss" as somehow limited to initial measures "necessary to protect the property from further damage" (Doc. 14 at 3), and the "second loss" as work relating to restoring the property, which GuideOne described as "enhanced repair, rebuild or replacement expenses."  (*Id.* at

-7-

2). However, the Complaint fails to set forth any allegations to such limited terms of

Sill's contract with OCSDA, and GuideOne's alleged distinction between the "first loss"

and "second loss" fails. The Complaint alleges that Sill conducts business as a "certified

public insurance adjuster" (Doc. 1 at ¶ 3), and that the contract between Sill and OCSDA

was to "appraise and adjust the repair and replacement of OCSDA's building and

contents loss" (*Id.* at ¶ 7). Therefore, the very predicate of GuideOne's subrogation claim

against Sill is that the so-called "second loss" was included within the proof of loss that

Sill, acting as a public adjuster, prepared on behalf of OCSDA. The contract between Sill

and OCSDA encompassed an appraisal of work and costs necessary to protect and repair

the property. Therefore, Sill did not breach its contract with OCSDA by including on

OCSDA's proof of loss the full range and extent of the property damage sustained by

OCSDA.

     Sill owed its duties to OCSDA, and not GuideOne, whose property damage claim

was adjusted by Sill and paid by GuideOne. Sill did not cause any damage or loss to

OCSDA. An insurer does not have a claim (subrogation or otherwise) against a public

adjuster hired by its insured for a proof of loss that he insurer later thinks is too big. This

case is similar to the decision in *Credit Gen. Ins. Co. v. Marine Midland Bank*, No. C-3-

86-561, 1992 U.S. Dist. LEXIS 22747 (S.D. Ohio Aug. 24, 1992), where the insurer, like

GuideOne here, sought to shift losses suffered by the insurer arising out of claims that it

paid, including by way of breach of fiduciary duty claims asserted against agents of the

insured.  *Id.* at 1.  The Court held that the insured's agent owed fiduciary duties to its

principal (the insured), but such an "agent does not owe fiduciary duties to third parties

with whom it transacts business on behalf of its principal." *Id.* at 19.  Therefore, while

GuideOne may have a subrogation claim against the person or entity that caused the fire,

it does not have a subrogation claim against the agent of its insured that assisted the

insured in adjusting its resulting loss.  *Northwestern Mut. Ins. Co. v. Jackson Vibrators,*

*Inc.*, 402 F.2d 37, 40 (6th Cir. 1968) ("subrogee acquires no greater rights than those

possessed by this subrogor").

The Court also denies GuideOne leave to amend, as any amendment of the

complaint would be futile because, as a matter of law, OSCDA has no claim against Sill

and therefore GuideOne has no subrogation claim against Sill either.

## IV.   CONCLUSION

Accordingly, for the reasons stated above, Defendant Alex N. Sill Company's

motion to dismiss with prejudice (Doc. 10) is **GRANTED**.  Defendant Alex N. Sill

Company is terminated as a party to this civil action.

**IT IS SO ORDERED**.

Date:   9/24/12                                                   *s/ Timothy S. Black*

                                                                              Timothy S. Black
                                                                              United States District Judge